## Whitaker et al. v. Howell & Goins et al.

June 14, 1940.

J. G. Vallandingham, Judge.

J. B. Wall and C. C. Adams for appellants.

Polk South, R. L. Vincent and Lee Lanter for appellees.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming.

On January 10, 1938, Howell & Goins, a partnership engaged in building construction, hereinafter referred to as the partnership, entered into a written contract with the Kentucky Carlsbad Mineral Water Company, hereinafter referred to as the corporation, agreeing to furnish labor and material in building a thirty-room hotel at Dry Ridge, Kentucky, to be completed by June 1, 1938, for the contract price of $32,167, of which 90% was to be paid when the structure was under roof. The partnership had the roof on the building by April 1, 1938, and demanded 90% of the contract price, which the corporation was unable to pay, but made promises that it would soon be able to raise some money, hence the partnership continued working with a small force until about the middle of June of that year. Nothing was paid by the corporation, so on November 10, 1938, the partnership filed a verified statement as required by Section 2468, Kentucky Statutes, in the Grant County Court Clerk's office asserting a mechanics' lien for $13,299.81 on the real estate upon which the hotel was constructed, being lots 1 to 8, and 15, which constitute

one boundary, and lot 17, which is separated from the hotel by the highway, but as it was to furnish mineral water for the hotel it is alleged to be a necessary apurtenance thereto.

On January 9, 1939, the partnership instituted this action in equity against the corporation, L. Whitaker and wife, and certain nominal parties not necessary to mention, asking that it be adjudged a mechanic's lien upon the property. By the petition as several times amended the partnership alleged that Whitaker and wife and the corporation entered into a contract whereby it was agreed that in consideration of the corporation issuing him 15,000 shares of its stock (one dollar par) and electing him its president, the Whitakers were to pay a purchase-money lien of $3,200 held by one Minick on lot 17, also purchase lots 1 to 4 and 15, known as the Marshall lots, and satisfy the Ben Chandler claim of $450. Under this agreement the Whitakers were to release the $3,200 Minick lien and to convey the Marshall lots to the corporation at any time it demanded. It was further averred the corporation complied with the contract and issued Whitaker the stock and elected him its president; but that he and his wife had the $3,200 lien assigned to her and had the title to the Marshall lots put in her name; that although the corporation has demanded the release of the lien and the conveyance to it of these lots, Whitaker and his wife have refused; that the title to the lots and the lien were accepted by Mrs. Whitaker for the use and benefit of the corporation and were held in trust for it by her; that the Whitakers knew the partnership was constructing the hotel at the time of their deal with the corporation and knew it was claiming a mechanic's lien against the property at the time Mrs. Whitaker purchased the lien and the lots. It is further alleged that the Whitakers jointly entered into a lease contract with the corporation leasing the hotel for ten years and are thereby estopped from claiming title to the property or a lien thereon.

The corporation filed an answer admitting the partnership's lien, and made this pleading a cross-petition against Mr. and Mrs. Whitaker wherein the averments of the partnership's pleadings were reiterated; that the Whitakers were wrongfully refusing to carry out their contract and it prayed personal judgment against them

for $450, the Chandler claim, and that they be forced to release the lien and to convey these lots to the corporation. The separate answers of the Whitakers as amended traversed the allegations of the pleadings of the partnership and of the corporation, after which they pleaded affirmatively that Mrs. Whitaker was not a party to any contract with the corporation and that her individual money was invested in obtaining the lien on lot 17 and the title to lots 1 to 4 and 15; that they had no notice the partnership was claiming a lien upon this property and Mrs. Whitaker was an innocent purchaser for value and the partnership was casting a cloud upon her title which should be removed. Several parties filed intervening petitions asserting mechanic's liens against the property, which pleadings were traversed by the Whitakers.

Much proof was taken, most of which was directed at what was the contract entered into between Whitaker and the corporation and as to whether or not Mrs. Whitaker was a party thereto, and whether or not her money, or the money of her husband, went into the property. It might be well to say here there is no controversy as to the partnership's lien on lots 5 to 8. The chancellor adjudged the partnership had a lien on lots 1 to 8 and 15, but that the hotel was not erected on lot 17, therefore it had no lien thereon. The chancellor further found that Whitaker and wife were each the agent of the other and were jointly interested in the contract with the corporation and that the corporation carried out its part thereof, but the Whitakers wrongfully refused to convey lots 1 to 4 and 15 to the corporation and to release the lien on lot 17; therefore, the master commissioner was ordered to release the lien and to execute a conveyance to the corporation for these lots. Personal judgment was rendered against Whitaker for $450, the amount of the Chandler claim, also for $184.18, being the difference between the amount he furnished and the $7,000 he agreed to furnish the corporation. Liens were adjudged to the various intervenors inferior to the partnership's lien. Whitaker and wife appeal. The partnership's brief mentions a cross-appeal on the ground it was not adjudged a lien on lot 17; but we find neither a motion for, nor an order granting, a cross-appeal, hence there is no cross-appeal for our consideration.

The Whitakers contend the chancellor erred: 1. In adjudging the partnership a lien since they were not given the 35-day notice required under Section 2463, Kentucky Statutes, and that its statement. asserting a lien was not filed in the county court clerk's office within six months after the last work or materials were furnished as required by Section 2468 of the Statutes; 2. in holding that the corporation complied with its contract with Whitaker and in holding Mrs. Whitaker was jointly interested therein with her husband in performing the contract he made with the corporation; 3. in granting personal judgment against Whitaker.

Section 2463, Kentucky Statutes, provides that one who has not contracted directly with the owner or his agent shall not acquire a lien under this section unless he shall notify in writing the owner of the property or his authorized agent, within 35 days after the last item of material or labor is furnished, of his intention to hold the property liable and the amount for which he will assert a lien. This section further provides such lien shall not take precedence over a mortgage or a bona fide conveyance for value without notice, duly recorded or lodged for record, unless the person asserting a mechanic's lien previously recorded in the county court clerk's office a writing showing he expects to furnish labor and material in a. given amount on the property. Here the contract for the construction of the hotel was made by the partnership directly with the owner of the property, the corporation, therefore this section has no application and the Whitakers were not entitled to the 35-day notice. Spinks Co. v. Pachoud Bros., 263 Ky. 119, 92 S. W. (2d) 50; Andrews v. Wilson, 253 Ky. 237, 69 S. W. (2d) 343; Hazard Lumber & Supply Co. v. South, 224 Ky. 737, 7 S. W. (2d) 206.

While the corporation did not have title to lots 1 to 4 and 15 at the time it contracted with the partnership for the building of the hotel, yet its vice president, Holliday, held an option from Marshall to buy these lots for the corporaion. The fact that Holliday assigned his contract to Mrs. Whitaker who exercised this option and bought the lots on May 20, 1938, in compliance of her husband's contract with the corporation, did not entitle Mrs. Whitaker to the 35-day notice of the intention of the partnership to assert a lien on these lots. The very

purpose of Mrs. Whitaker in acquiring the $3,200 Minick lien and the title to these lots was to release the lien and to transfer the lots to the corporation so that the parnership would continue building the hotel. This is shown in a letter Whitaker wrote Holliday on May 3, 1938, wherein he said:

"Mr. David Goins (a member of the partnership) stated that they would not complete the building until they had received the first payment as provided by the contract. He indicated however, that in the event the Marshall property was cleared that he felt he would be safe and the money could be raised to complete same. * * * Since investigation I am inclined to pay off and discharge the indebtedness on the Marshall property and also the indebtedness due on the Minix (Minick) note, together with the contractor's (Chandler's $450 account), charge for filling in the front of the hotel, which amounts to approximately $7,000."

In this same letter Whitaker demanded 15,000 shares of the corporation's stock and that he be elected president in consideration of furnishing this $7,000. The corporation accepted Whitaker's proposition contained in this letter and elected him president and ordered 15,000 shares of its stock issued to him, all of which is shown by the corporate records. In the circumstances neither Whitaker, nor Mrs. Whitaker was entitled to the 35-day notice that the partnership was claiming a lien on this property.

There is some conflict in the evidence as to whether or not the partnership furnished any labor or materials on this job after the first of May, 1938. However, the chancellor's finding that the statement required by Section 2468 of the Statutes, which was filed November 10, 1938, was filed within six months from the time the last labor and material was furnished is abundantly supported by the evidence. It is true that the furnishing of trivial labor or material not necessary to the completion of the contract will not extend the time within which the statement asserting the lien may be filed. Henry Koehler & Co. v. Hines, 185 Ky. 270, 214 S. W. 906; Vogt v. Cannon Electric Co., 245 Ky. 766, 54 S. W. (2d) 338. Here the contract was never completed and it can-

not be said that the work done in June by the partnership was of a trivial nature.

The documentary evidence in this case consisting of letters written by Whitaker, and others to which his name was signed, and appearing immediately under his name are Mrs. Whitaker's initials, and the minutes of the meetings of the board of directors for the corporation, convinces us that Whitaker agreed with the corporation to clear lot 17 from the $3,200 Minick lien and to put the title to the Marshall lots in the corporation in consideration of it issuing to him 15,000 shares of stock and electing him its president. The corporation strictly performed its part of the contract and when Whitaker was called upon to carry out his end of the bargain, he contended his wife's money went into the property, that she was not a party to the contract and all he obligated himself to the corporation to do was to induce his wife to invest her funds in this property and to hold the same until the corporation was able to buy it from her.

We need cite only two excerpts from the evidence in support of our conclusion. In a letter of July 20, 1938, written to Holliday, vice president of the corporation, signed "L. Whitaker" and immediately thereunder appears "C. W." (Mrs. Whitaker's initials) it is said:

"I will still owe the company the difference between the two leans (liens) I have paid (referring to the $3200 lien on lot 17 and to the balance of $3000 for the purchase price on the Marshall lots), and I will take care of that when I come down."

This letter was written after the minutes of the corporation showed he was elected president and after it had ordered 15,000 shares of stock to be issued to him. Whitaker did not remember the date this stock was issued to him, but testified it was after his wife had invested in the Marshall lots and in the Minick lien. He testified his agreement with the corporation was that if he would get his wife to pay off the Minick lien and take title to the Marshall property and hold same until the corporation was able to redeem them from her, it would issue him 15,000 shares of its stock. We could cite numerous other statements from the record just as damaging to the Whitakers, but it is unnecessary. These two statements plainly show that Whitaker obligated himself to furnish $7,000 to clear the property upon which

the hotel was located in consideration of it electing him president and issuing him 15,000 shares of its stock.

Mrs. Whitaker has had considerable experience in operating a boarding house, and Whitaker is a dentist by profession. In his letters written before and during the time he was making this deal, he said he was worth $25,000 or $30,000, with an income from rents of $300 per month. But after the controversy arose, he testified that he did not own property of any considerable value; that his wife held the purse strings and it was her money which went into this transaction. The evidence is not at all convincing that Mrs. Whitaker used her individual funds in this transaction, although the checks expending some $6,400 were signed by her. However that may be, the evidence supports the chancellor's findings that Mrs. Whitaker was jointly interested in the contract with her husband, and that he was her agent in the matter. She inspected the property on numerous occasions with her husband and her initials appear directly under his signature on many of the letters concerning the deal, which indicate she wrote these letters. In order to obtain a loan from the Refunding Finance Corporation it was necessary that the hotel be leased, and she and her husband signed a lease contract agreeing to rent the hotel at $350 per month for a period of ten years upon its completion. Such evidence clearly establishes she was jointly interested with her husband in this business venture, and that he was not only acting for himself, but also as her agent. There is no escape from the conclusion that Mrs. Whitaker in taking title to the Marshall lots and in accepting the assignment of the Minick lien was in law acting as trustee for the corporation. 18 C. J. S., Corporations, 530, Section 127; Friedman v. Janssen, 66 S. W. 752, 23 Ky. Law Rep. 2151; African M. E. Church v. Conover, 27 N. J. Eq. 157; New England Mfg. Co. v. Vandyke, 9 N. J. Eq. 498.

Appellants' contention that personal judgment should not have been rendered in favor of the corporation against Mr. Whitaker cannot be sustained. The corporation's cross-petition averred, and the proof showed, that Whitaker personally obligated himself to furnish it $7,000 and he fell short in doing so. Therefore, the chancellor did not err in rendering personal judgment against him for the Chandler item of $450,

and $184.18, the difference between the $7,000 Whitaker agreed to furnish the corporation and the sum he actually expended in its behalf.

Judgment affirmed.